Thomson, P. J.,
delivered the opinion of the court.
Suit by real estate agent for commission. Judgment against him, from which he appealed. The principal facts are not in dispute. There was some conflict in the evidence, but it related to immaterial matters. The facts upon which both sides agree are determinative of the case, and the others will not he noticed.
The plaintiff, Williams, was a real estate agent in the city of Trinidad. The defendants, George H. Bishop and M. B. Munroe, were the owners of certain real estate in that city, consisting of a lot with a house upon it. The defendant, O. M. Bishop had charge of the interest in the property of George H. Bishop who was his brother. The defendant, W. F. Munroe, was the husband of M. B. Munroe, and represented her interest. Her interest had been conveyed* to E. L. Blake, and stood in his name. The conveyance had been made as security for a debt, and was, therefore, a mortgage. O. H. Blake was the brother of E. L. Blake, and in certain transactions concerning the property, which will he noticed hereafter, acted for him. He also had authority from C. M. Bishop and W. F. Munroe to sell the property. About September 1, 1895, O. M. Bishop placed the property with the plaintiff for sale at $2,300, exclusive of commission. After-wards, W. F. Munroe, on learning what Bishop had done, declined to accede to it, saying that the interest he represented must be sold at a higher rate. It was then agreed between these two men and the plaintiff that the latter should sell the property for $2,500, and deduct his commission from the purchase price. At this time the plaintiff informed them that he would show the property to a lady who was desirous of purchasing real estate, and with whom he was in communication. The name of the lady was Mrs. Waldron. She lived out of the city, and, as will be seen, she finally became the purchaser of the property. Shortly afterwards, in pursuance of prearrangement with the plaintiff, she came to his office, stating that she had closed her own matters out, and *380 was ready to buy. He took her to this property, and showed her through the house. He priced it to her at $2,500 in accordance with his agreement with the owners’ representatives. She expressed herself as much pleased with the house, and took a few days to consider the proposition. A short time afterwards, in company with C. H. Blake, she was looking at various properties in the city. While looking around, the two happened to pass this particular property, and she called Blake’s attention to it, saying that the plaintiff had showed it to her and had offered it to her for $2,500, and that she thought it was a very pretty place for a residence. Blake replied that he thought he could sell it to her for less money. He then took her to the owners’ representatives, and a sale of the property to her was effected for $2,300. The action is for a commission on that sum, and whatever liability for the commission there may be, is against George H. Bishop and M. B. Munroe.
In Finnerty v. Fritz, 5 Colo. 174, Beck, J., said: “ The general principles of law applicable to real estate brokers appear to be well settled, and rules defining their duties have been laid down and sanctioned by a long course of judicial decisions, but difficult questions often arise whether or not a given state of facts bring the agent within a rule which imposes a forfeiture of commissions for misconduct. On such questions some contrariety of opinion exists. The weight of authority favors a stringent application of these rules to all cases falling clearly within their reason; but as to all other cases, whenever it is made to appear that the agent is the procuring cause of the sale, the law leans to that construction which will best secure the payment of his commissions rather than the contrary.” What the learned judge meant by his reference to a forfeiture of commissions for misconduct, is indicated in a subsequent portion of his opinion ; but there is nothing whatever in this case by which it might be included in the class of cases he had in mind. According to the general rule which he laid down as governing all other cases, if the plaintiff was the procuring cause of *381 the sale to Mrs. Waldron, he is entitled to the commission. That he was, does not seem to me to admit of a doubt. He took her to the property and showed it to her, at the same time giving her the price. She made such examination of the house as she saw fit, and the result was that she was impressed favorably. She so expressed herself to him, and took a little time to revolve the proposition in her mind. Shortly afterwards Mr. Blake was taking her around the city to look at other properties. He did not show her this property, but, on passing it she called his attention to it, and indicated her prepossession in its favor, informing him that it had been shown to her by the plaintiff. Apparently Mr. Blake did not have this property in mind at all, and, so far as the evidence discloses, Mrs. Waldron would never have heard of it except for the plaintiff. As soon as Blake learned that she had examined this property, and that she thought it desirable, he took her to the owners or their representatives, who sold it to her for a less price than that to which they had limited the plaintiff. Upon the face of the evidence, except for the plaintiff, the sale would not have been made. He was, therefore, its procuring cause.
But it is argued for the defendants that, to entitle the plaintiff to the commission, he should have done something more than he did. Counsel object that he did not take her around and introduce her to his principals, and that he did not negotiate with her between the time when he showed her the property, and the time when Blake got hold of her. Why he should introduce her to the owners before she had come to a final conclusion concerning the property and the price, is not evident, either from the view of common sense, or from counsel’s argument. Until her determination was reached, there was no occasion for an introduction. And why he should negotiate with her is not clear. She had given herself time for consideration. During that time there was nothing to negotiate about. If he had persisted in obtruding himself upon her while she was thinking the matter over, he would not have displayed very good business sense, *382 and would, possibly, have imperiled the sale. Overanxiety in such a case might have a tendency to excite suspicion, and it is hardly good policy to wear a proposed customer out by excessive attention.
But counsel venture the assertion that Mrs. Waldron would not have paid $2,500 for the property, and that, therefore, the plaintiff could not have made the sale. This statement has no foundation in the evidence. Mr. Blake, in his testimony, volunteered the remark that he knew Williams could not sell her the property. In the nature of things, he could not know whether Williams could sell her the property or not. He was not qualified to say that she would not pay $2,500 for it; and if she would, the sale could be made. She was on the witness stand, but did not say that she would not have paid that price. It is plain that when she passed the house with Blake she was seriously considering the plaintiff’s proposition; and the speed with which the bargain was closed after she found she could obtain the property for less than the plaintiff’s price, is evidence of a desire to possess it, and is the reverse of an indication, that she would not have, at last, come to the plaintiff’s terms.
But the owners are hardly in a position to say that the plaintiff could not have made the sale. When they placed the property with him, he informed them that he had an applicant for real estate, to whom he would show this properly. That applicant was Mrs. Waldron, although he did not give them her name. The property was afterwards shown to her, and the figure named at which it could be procured, and while she was still considering the purchase on the plaintiff’s terms she told Mr. Blake that the plaintiff had offered it to her at $2,500. Blake was their agent, and his knowledge, so acquired, was their knowledge. But Blake himself testified that as soon as he returned from his trip with Mrs. Waldron, he told them what she had said. Therefore, with knowledge that the plaintiff had procured a prospective purchaser, to whom he was endeavoring to effect a sale, and who was still meditating upon his proposition, they found *383 his client, took possession of her, and by reducing the price below that which they had authorized him to accept, rendered it impossible for him to make the sale, and, ignoring him entirely, effected it themselves. He had prepared the way for a sale, and they availed themselves of his preparation to forestall and defeat him. Under such circumstances I do not think they can defend themselves against his claim by saying that the sale could not have been consummated by him.
It appears that after the terms had been agreed upon between them and Mrs. Waldron, instead of conveying the property to her directly, they conveyed it to Blake, and she took her deed from him. The argument is that as they did not sell the property to the plaintiff’s client, but to an entirely different person, they incurred no liability to the plaintiff, and he has therefore, no claim against them for a commission. This theory is not of sufficient consistency to possess a resisting force. Blake was merely a channel through which the title passed from them to Mrs. Waldron, and there was no sale by them except to her.
The defense places great reliance upon the decision in Anderson v. Smythe, 1 Colo. App. 253, as announcing a doctrine which precludes a recovery by this plaintiff. The facts in that case differ in some important particulars from the facts in this, so that the conclusion reached there, is not necessarily decisive here. Counsel deduce from the opinion the rule that to entitle the agent to a commission, there must, in all cases, be a personal introduction by him to his principal of the prospective purchaser; and, perhaps, the language of the opinion justifies the deduction. In so far as it does, it goes to an extreme, and, as I think, an unwarrantable, length. When the agent and the purchaser have come to an agreement as to terms, and nothing remains to be done, except to consummate the transaction, it may well be the duty of the agent to advise his principal of what he has done, and it may be necessary to bring the parties together to complete the sale and effect the transfer. But to say that a principal who has *384 knowingly interfered between the agent and Ms client, while the client had the purchase under advisement, and the negotiation was still incomplete, and induced the latter to purchase directly from himself, can successfully resist a claim for commission on the ground that the agent had not, in the first instance, introduced him to the prospective purchaser, would be to give expression to a doctrine subversive of business morality. It would be to say, in effect, that a party can, in a court of justice, interpose in Ms defense, Ms own bad faith.
The decision in that case was not unanimous. Judge Bis-sell expressed his dissent in a clear and forcible opinion, in which he subjected the main authorities cited in the principal opinion to a critical examination, and reached a conclusion upon the law governmg such cases which commends itself to my mind as sound. I adopt it as applicable to the facts of this case. Leaving that decision for further comment when a case shall arise to wMch it is more directly applicable than to this, and considering this case in the light of its own facts, it is my opinion that the judgment should be reversed.

Reversed.