[No. 2111.]

WILLIAMS v. BISHOP ET AL.

1. **Principal and Agent—Commissions—Quantum Meruit.**

In an action by a real estate agent for commission where he
sues for the reasonable value of his services, it is immaterial
whether or not there was an agreement as to the amount of the
commission.

2. **Same—Evidence.**

In an action by a real estate agent for commission where
the evidence showed that he was entitled to commission, and he

testified that his services were worth a certain sum, and his evidence as to value was uncontradicted, he was entitled to judgment for that amount.

**3. Same.**

Evidence examined and held sufficient to entitle a real estate agent to commission on a sale of property.

**4. Appellate Practice—Directing Judgment.**

Where a cause has been twice tried without material change of the evidence and each time the evidence showed plaintiff to be entitled to a judgment for a certain sum, and there is no reason to believe that there would be any material change in the evidence at another trial, the judgment of the lower court for defendant will be reversed and judgment for plaintiff directed.

*Appeal from the District Court of Las Animas County.*

Mr. W. B. MORGAN, for appellant.

Mr. A. J. ABBOTT and Mr. JAS. McKEOUGH, Jr., for appellees.

THOMSON, J.

This case is before us for the second time. The result of the former investigation was the reversal of a judgment against the present appellant.—*Williams v. Bishop,* 11 Colo. App. 378.

The last trial brought him no better fortune than the first, and it is to be ascertained whether the new evidence presented such change in the situation as to make good a judgment which before was erroneous.

Recovery was sought for services rendered in finding a purchaser for certain real estate; the plaintiff in his complaint placing the value of such services at $115. At the first trial as appears from the opinion the witnesses on both sides testified to substantially the following facts: The plaintiff Williams was a real estate agent in the city of Trinidad; the defendants, George H. Bishop and M. B. Munroe, were the owners of certain real estate in that city consisting of a lot with a dwelling house on it; C. M.

Bishop was a brother of George H. Bishop, and had charge of his interest in the property as his agent; W. F. Munroe was the husband of M. B. Munroe and acted for her in relation to her interest; M. B. Munroe had conveyed her interest to E. L. Blake as security for a debt she owed him; C. H. Blake was a brother of E. L. Blake, and in some of the transactions affecting the property acted for him; C. M. Bishop as agent for George H. Bishop, and W. F. Munroe as agent for M. B. Munroe placed the property with the plaintiff for sale at $2,500, his commission to be deducted from the purchase price; those men were at the time informed by the plaintiff that he was in correspondence with a lady who was desirous of purchasing real estate there and to whom he would show this property; the lady was Mrs. Waldron who lived out of the city. Shortly after the property had been placed with the plaintiff Mrs. Waldron, by prearrangement with him, came to his office and stated that she was ready to purchase; he took her to this property and showed her through the house. He informed her that the price was $2,500. She expressed herself as much pleased with the property and took a few days to consider the proposition. Shortly afterwards in company with C. H. Blake she was looking at different properties in the city, and happening to pass this particular property she called his attention to it saying that it was a pretty place for a residence and that the plaintiff had showed it to her and offered it to her for $2,500. Blake replied that he thought he could let her have it for less money and took her to the owners' representatives, who sold it to her for $2,300. Before they made the sale Blake told them what Mrs. Waldron had said in relation to the plaintiff's offer of the property to her. Upon the foregoing facts we held the plaintiff entitled to a commission, and reversed the judgment

denying it, and if this judgment was rendered upon substantially the same evidence that appeared in the former record it cannot stand.

But it is insisted for the defendants that there was such change in testimony and such additional evidence as warranted the judgment. After a few words concerning an episode of the trial we shall look into the claim.

W. F. Munroe was a witness for the defendants. He had testified that the transaction between M. B. Munroe and E. L. Blake was a sale, and that the deed conveyed an absolute title. In the course of his cross-examination by plaintiff's counsel he was asked this question:

"Isn't it a fact that your efforts to testify contrary to the fact that that deed was a mortgage is for the purpose of showing that somebody else owned this property besides your wife in order to avoid a judgment against her?"

To this he answered:

"I would not say that. I am a pretty good liar myself."

The testimony of a witness who while testifying boasts that he is a liar is entitled to no consideration and will receive none here.

Counsel say that the testimony last given concerning the price at which the plaintiff was authorized to sell the property differs from that produced at the former trial, and that the plaintiff's statement that the price was $2,500 was squarely contradicted. The only witness for the defendants aside from W. F. Munroe who spoke on the subject was C. M. Bishop. The following is what he said:

"I heard Williams' testimony. I never told him he could take the property for $2,500 and take 5 per cent. commission. I met him in his office and told him he could have all he could get above $2,300."

The testimony of the plaintiff was that originally the property was placed with him by C. M. Bishop at $2,300; that he did not know at the time that Munroe had any interest in it; that shortly afterwards in Bishop's absence Munroe accosted him, asserting ownership and saying that he would not take for his interest what Bishop wanted, and that the two men were then joined by Bishop, and after some conversation it was agreed among them that the plaintiff should sell the property for $2,500. In the course of his testimony the plaintiff also said it was agreed that he should have a commission of five per cent. Except as to the matter of commission we find no contradiction between the plaintiff and Bishop. They both mentioned $2,300 as a price for which the property might be sold. The plaintiff said the price was afterwards changed, and Bishop did not say it was not. Bishop did not deny that the selling price was finally fixed at $2,500. What he denied was that the plaintiff was authorized to sell for $2,500 and take 5 per cent. commission. That the price was $2,500, but that there was no agreement as to amount of commission is entirely consistent with his testimony. The plaintiff's suit is not upon a contract, but for the reasonable value of his services, and it is immaterial whether there was an agreed commission or not. As to the price which the plaintiff might ask for the property the witnesses were in harmony.

The following is what Mrs. Waldron said:

"Mr. Williams and I had been in correspondence and he showed me the property about a week or just a few days before the price was agreed upon. When we got over to the house I looked it over and thought it was very nice and pleasant, and as we left the house I asked him what price it could be bought for. He said $2,500. As far as liking the house is concerned I expressed it in very plain English that it

was a very nice little house and that I liked the property but the price was more than I could agree to pay for it. He took me down to the hotel and I said I would come down again. Of course I cannot remember the exact conversation. The same afternoon Mr. Blake took me out to see the same property and to look at some lots, and some houses he had built. I mentioned to him that Mr. Williams had shown me a house when we were on the street below. I told him: 'That house there Mr. Williams had shown it to me for sale. It is a very nice place.' He said: 'I built that house. Would you like to see it?' I said no, I have seen it, but he could drive me up there if he liked, and so he did. I paid $2,300 for the property. * * * I had seen Mr. C. H. Blake in Catskill, and came down more to have him show me in regard to property he could build. Not that exactly, but to see what I could do. At that time Mr. Williams showed me this property and it was only three days elapsed from that time until I came down and purchased the house. I declined to purchase the property at first on account of the price given me by Mr. Williams, and I would not under any circumstances have reconsidered that proposition at the time I came down again."

Before her purchase Mrs. Waldron lived at a place called Catskill, and came down from that place to Trinidad. The construction which counsel give her statements would make them inconsistent with her former testimony. We do not think her language demands such construction or that what she said on the two occasions necessarily involves contradiction. Her remark to the plaintiff that the price was more than she could agree to pay is simply illustrative of the usual disposition of a buyer to purchase at as low a figure as possible, and that it was not intended to be final is indicated by the fact that when she left

the plaintiff she told him she would come again. It is true she afterwards said that she would not, under any circumstances, have reconsidered the remark; but she also said it was at the time she came down again that she determined against reconsideration. Before she "came down again," namely, on the same day in the afternoon of her talk with the plaintiff she was offered the property for $2,300. That she should upon reflection resolve not to reconsider her statement and determine not to pay the plaintiff's price is hardly surprising; but the conduct of the defendants supplied the reason for her resolution, and they have disabled themselves to say that without interference by them she would not have purchased from the plaintiff. The plaintiff testified that when he made her the offer she took time to consider it. Her statements were, to say the least, not inconsistent with his testimony, and contained nothing which would influence us to change the views we expressed in our former opinion.

We are told by counsel that there was no evidence that either W. F. Munroe or C. M. Bishop had any authority to contract for the sale of this property through the plaintiff. We do not understand this statement. The direct and unchallenged testimony of witnesses competent to speak on the subject was that when the property was placed with the plaintiff W. F. Munroe was representing the interest of M. B. Munroe, and C. M. Bishop the interest of George H. Bishop.

Finally, it is said that at the time the property was left with the plaintiff M. B. Munroe had no interest in it, having previously sold and conveyed her interest to Blake, who never authorized the plaintiff to sell it. Blake testified as follows:

"I told Munroe if I could sell the house for more than he deeded it to me at, I would give him the

benefit of it. The benefit was to apply on his indebtedness to me. * * * I testified in my former testimony that I had a loan on the property.''

The following then occurred:

''Q. Isn't it a fact that that deed was held as security for an indebtedness that Mrs. Munroe owed you?

''A. It is not.

''Q. Why did you testify to that effect in the former trial?

''A. Because it answers the same thing.''

It is evident from the foregoing that the deed was given as security for a debt; that it was therefore a mortgage and that Blake's assent to the authority given the plaintiff was unnecessary. And the conduct of all the parties including Blake himself with reference to the property and its sale is inconsistent with any other hypothesis.

The foregoing are the only instances of change in testimony, or of new testimony, to which our attention has been directed. It is true that the evidence deviated in several particulars from that on which our former decision was based, but the differences were unimportant. As to the authority given the plaintiff—what, to the defendants' knowledge before selling to Mrs. Waldron, he did under it—and the conduct of the defendants in forestalling him, we have here substantially the same case that we passed upon before. The defendants introduced no testimony which is not susceptible of legitimate explanation harmonizing it with the plaintiff's statements. The plaintiff testified that his services were reasonably worth the sum named in his complaint, and there was no evidence to the contrary.

The case has been tried twice, and we have no reason to believe that at another trial there would be any material change in the evidence. The judg-

ment will therefore be reversed, with direction to the trial court to enter judgment in the plaintiff's favor for $115.                                    *Reversed.*

GUNTER, J., not participating.