## TRENT TRUST COMPANY, LIMITED, *v.* F. W. MAC-FARLANE.

### EXCEPTIONS FROM CIRCUIT COURT, FIRST CIRCUIT.

ARGUED FEBRUARY 14, 1913.          DECIDED FEBRUARY 24, 1913.

### ROBERTSON, C.J., PERRY AND DE BOLT, JJ.

PRINCIPAL AND AGENT—*agent to procure purchaser—procuring cause of sale.*

A broker employed to procure a purchaser for land who finds a prospective purchaser who is able and willing to buy and starts

negotiations which result in the coming together of the owner and purchaser in the final relation of vendor and vendee will be regarded as the procuring cause of the sale.

SAME—*ability of purchaser to perform—deed taken in name of trustee.*

The ability of a purchaser to perform is not open to question where a sale has been effected upon the vendor's terms, and it does not affect the broker's right to a commission on the sale that the purchaser borrowed the money with which to pay the purchase price and the deed was taken in the name of a trustee.

SAME—*transaction closed through second broker—right to commission on sale.*

The broker who was the procuring cause of a sale will not be deprived of his right to a commission because the transaction was closed through a second broker where the principal had taken no steps to terminate the agency before the purchaser had been procured.

### OPINION OF THE COURT BY ROBERTSON, C. J.

This is an action of assumpsit to recover the sum of $125 claimed by the plaintiff to be due from the defendant for broker's commissions upon the sale of a parcel of land belonging to the defendant.

The principal facts, some of which were expressly found by the court below while others were shown by uncontradicted evidence, were as follows: The defendant owned a piece of land in Honolulu for which he had requested the plaintiff, a real estate broker, to find a purchaser; the Clark Farm Company, Limited, in the early part of March 1911, desiring to purchase a site for a factory applied to the plaintiff and was shown the lot in question and found it suitable for the purpose; the price put upon the lot by the defendant was $2500, cash; the Farm Company, being unable to pay the price in cash offered through the plaintiff to pay the amount in instalments, but the defendant declined the offer; other terms were suggested by the Farm Company which the defendant was inclined to consider favorably but which were not met by the Farm Company and came to nothing; in the meantime the Farm Company asked the plaintiff for financial assistance which would enable it to make the purchase, and upon plaintiff's refusal the Farm Company

requested the Pinectar Sales Company, Limited, which was under contract to make certain advances to the Farm Company, to advance the money and make the purchase for the Farm Company; thereupon E. A. Berndt, the president of the Pinectar Company, requested another broker to purchase the land on his behalf; the second broker told the defendant that the Trent Trust Company could not make the sale and that it was "all off," and the defendant, relying upon this representation, and because he had heard nothing further from the plaintiff, gave the broker the plaintiff's receipt for the title papers and instructed him to get the papers from the plaintiff; the plaintiff surrendered the papers "under protest;" the defendant explained to the plaintiff his reason for withdrawing the papers; the purchase price was paid by the Pinectar Company or its president through the second broker in the latter part of March and the defendant executed and delivered a quit-claim deed of the property conveying it to E. A. Berndt, "as trustee;" Mr. Berndt testified at the trial that he purchased the land for the Clark Farm Company, and said that the deed was taken in his name as trustee by way of security for the amount advanced until such time as the amount could properly be charged to the account of the Farm Company on the books of the Pinectar Company; the transaction was a continuous one, and the defendant testified that when he executed the deed he understood that he was conveying to the same party, or "crowd," as he put it, as he had been negotiating with, and that it was the consummation of the transaction that had been begun with the plaintiff; in the early part of the following June Berndt handed over his deed to the Farm Company, and upon the request of that company the defendant executed and delivered a warranty deed of the premises to the Farm Company. On other points there was some dispute. A witness for the plaintiff testified that before the title papers were withdrawn from plaintiff's possession, an offer made by the Farm Company to pay $500 within four days, or on March 20th, and the balance "within a few

days," had been communicated to the defendant and accepted by him, but this was denied by the defendant. The president of the Farm Company testified that the Pinectar Company was obliged by the terms of its contract to make the advance requested. On the other hand the president of the Pinectar Company testified that there was no obligation to make the advance at that time, and that later when the Farm Company became entitled to the credit he handed over the deed. The contract between the two corporations was not in evidence. The plaintiff's exceptions being to the decision and judgment of the circuit court on the ground that they were contrary to the law and the evidence, nothing in plaintiff's favor can be deduced from the disputed facts. The case was tried without a jury.

The ground upon which the circuit court rested its conclusion is thus stated in its decision: "An agent in order to recover commissions for the sale of the property must show that he procured a customer both ready and able to purchase on the terms prescribed by the seller. Has the plaintiff shown this by a fair preponderance of the evidence? I am of the opinion that it has not. While it is no part of the agent's duty to finance a proposition to consummate a sale, except as a matter of business method, the obligation still remains to find a customer entirely able to perform, and while it is true that Mr. Berndt in making the purchase took the title in his own name, as trustee for the benefit of the Farm Company, and the defendant admitted that he understood that the deed was in a way for the same parties that were introduced by the plaintiff and subsequently executed another deed for the property to the Farm Company these facts which I find from the evidence do not, in my opinion, support the claim of the plaintiff."

There was no express finding on the point whether the defendant had terminated the agency of the plaintiff in the matter. The defendant did not testify that he did terminate it, and whether the withdrawing of the title papers from the plaintiff's possession under the circumstances shown by the testimony

was evidence upon which a finding of the termination of the agency by the defendant could have been predicated we need not say. The negotiations had proceeded to such a point that a revocation of the plaintiff's agency at the time referred to would not have had the effect of depriving the plaintiff of its right to a commission if it otherwise was entitled thereto.

The principles applicable to a case such as this were stated in *Schnack* v. *Montano*, 16 Haw. 805, as follows: "A broker is not entitled to commissions unless he procures a purchaser able and willing to buy; when no time is limited either party may in good faith terminate the agency at will; the broker is not entitled to commissions upon a sale effected thereafter through another broker even though to the purchaser introduced by the first broker, or even though the sale is aided more or less by the first broker's previous efforts, provided the principal acts in good faith; but if the broker procures a prospective purchaser he cannot be deprived of his commissions by the termination of his agency by the principal even though the sale is not consummated until afterwards, provided he was the procuring cause of the sale, or if the principal acted in bad faith for the purpose of avoiding payment of the commissions."

Counsel for the plaintiff do not contend that there was any evidence of bad faith on the part of the defendant, but they argue that as the purchaser was introduced by the plaintiff, and the transaction was a continuous one, the plaintiff must be regarded as the procuring cause of the sale, and that as the sale was in fact consummated, though through another broker, the finding that the plaintiff had failed to procure a purchaser who was able and ready to buy was unsupported by any evidence and constituted error of law. Counsel for the defendant maintain that the decision of the circuit court was amply sustained by the evidence.

The efforts of the plaintiff laid the foundation on which the negotiation began, and resulted in the coming together of the owner and the prospective purchaser in the final relation of

vendor and vendee.   The plaintiff, therefore, was the procuring cause of the sale.   *Hoadley* v. *Savings Bank,* 71 Conn. 599; *Hambleton* v. *Fort,* 58 Neb. 282; *Peckham* v. *Ashhurst,* 18 R. I. 376.  The second broker did nothing toward bringing the parties together, but merely closed the bargain at the direction of the purchaser.   The fact that the deed was taken in the name of a trustee does not affect the result.   *Williams* v. *Bishop,* 11 Colo. App. 378, 383.   Nor can it make any difference that the purchaser was under the necessity of borrowing the money with which to pay the purchase price.   The plaintiff being the procuring cause of the sale, the agency not having been terminated before the purchaser had been procured, the transaction having been a continuous one, and the sale having been perfected upon the terms demanded by the vendor, there is no room for discussion on the point whether the customer procured by the plaintiff was ready, able and willing to buy.   The ability of the purchaser to perform was demonstrated by the payment of the purchase price.   We think that under the circumstances above enumerated the authorities are without conflict to the effect that the broker will be entitled to his commission.

The cases of *Wylie* v. *Marine Nat. Bank,* 61 N. Y. 415, and *Sibbald* v. *Bethlehem Iron Co.,* 83 N. Y. 378, cited in defendant's brief, are readily distinguishable.   In the former case the first broker had abandoned his efforts before the buyer and seller had come to terms, and in the latter, the principal had in good faith and with justification terminated the first broker's agency.   In the case at bar there was neither an abandonment by the plaintiff nor a revocation of the agency by the defendant, or, at least, not such a revocation as would defeat the claim to the commission.

The exceptions are sustained, and the judgment is vacated.

*I. M. Stainback* (*Holmes, Stanley & Olson* on the brief) for plaintiff.

*M. F. Prosser* (*Prosser, Anderson & Marx* on the brief) for defendant.