(100 South. 51)

No. 24407.

## GRACE REALTY CO. v. NOEL.

(March 31, 1924. Rehearing Denied by Division C May 5, 1924.)

*(Syllabus by Editorial Staff.)*

1. **Brokers** ⊚〰84(1)—**Burden on principal to establish termination of agency by limitation.**

Where principal admitted contract to pay broker named commission, burden was on principal to establish expiration of such agreement by limitation before consummation of sale by himself.

2. **Brokers** ⊚〰57(2)—**Brokers held entitled to full commissions on sale consummated by principal.**

Where broker procured purchaser who bought property for agreed purchase price directly from principal, who, to consummate sale, reduced cash payment, *held*, that broker was entitled to agreed compensation.

Appeal from Twenty-Seventh Judicial District Court, Parish of Ascension; Philip H. Gilbert, Judge.

Action by the Grace Realty Company against Robert E. Noel. From judgment for plaintiff for an insufficient amount, plaintiff appeals. Reversed and rendered.

John Marks and Ansil N. Simmons, both of Napoleonville, for appellant.

Walter Lemann, of Donaldsonville, for appellee.

By Division B, composed of Justices DAWKINS, LAND, and LECHE. LECHE, J., of this division, being absent on account of illness, Justice ROGERS, of Division A, heard the argument and took part in the decision in this case.

LAND, J. Plaintiff company, a commercial and real estate partnership, composed of Charles E. Grace and Albert L. Grace, seeks to recover in this suit a commission of $5,000 from the defendant, Robert E. Noel, for the sale of the McManor plantation, owned by said defendant, and situated in the parish of Ascension.

It is alleged that on or about November 25, 1919, said plantation was placed by defendant in the hands of said partnership, the members of which are real estate agents and brokers, for sale at a price of $135,000, and upon an agreed commission of $5,000; that said firm on January 14, 1920, secured Dr. Isaac D. Benson as purchaser of said plantation at said price; and that the act of sale from defendant to Benson of this property, for a consideration of $135,000, was passed before a notary public January 17, 1920.

Plaintiff company avers that, notwithstanding the fact that its members procured a purchaser for this property, after diligent effort on their part and the expenditure of both time and money, defendant has tendered them only the sum of $2,500 as a commission, instead of the sum of $5,000 the commission stipulated between the parties.

Defendant admits in his answer that, while on or about November 25, 1919, he entered into a verbal agreement with Albert Grace, a member of plaintiff company, to sell this property for the price of $135,000, payable one-half cash and balance on time, upon a commission basis of $5,000, yet defendant alleges that this agreement was limited to a period of 2 weeks, the defendant reserving to himself the right to sell the property in the meantime. Defendant avers that said agreement expired by limitation, without any sale having been effected by Grace, and that he then notified Grace that the property was no longer in his hands for sale, and that the same was withdrawn. Defendant alleges that the payment of the cash portion of the purchase price was a vital and important factor in the proposition, and that he was unwilling to dispose of his property, unless at least $60,000 cash was paid to him.

Defendant admits in his answer that some time later, on or about January 14, 1920, he

agreed that Grace might bring a prospective purchaser to see the property; but alleges that at the time there was in existence between defendant and Grace no agreement of any kind relative to any commission.

It is admitted by defendant in his answer that the plantation was sold by him to Dr. Benson, the prospective purchaser brought to defendant, for the sum of $135,000; $40,000 being paid in cash, and the balance of the purchase price being secured by mortgage notes. Defendant avers, however, that before closing the deal with Dr. Benson he called up Grace at Plaquemine over the long-distance telephone, and took up the matter of compensation with him, and that Grace expressly agreed to take the sum of $2,500 as a commission for the sale. Defendant has tendered this sum in open court.

It appears, therefore, from the admissions of the defendant himself that there was a verbal agreement between him and Grace to sell this plantation for the sum of $135,000, and that Grace produced the prospective purchaser, Dr. Benson, who purchased the property for said price.

The only question, therefore, remaining for us to decide, is whether the commission of $5,000, originally agreed upon, should be paid to Grace, or the commission of $2,500, tendered to him by defendant, should be accepted by Grace as his compensation for bringing about the said sale.

We are not impressed by the statement made by defendant in his answer that the payment of $60,000 cash was a vital and important factor, and that he was unwilling to sell his place unless at least $60,000 cash was paid to him. As a matter of fact, defendant sold his property to Dr. Benson within 60 days after the agreement, of date November 25, 1919, for $40,000 cash. This is clear proof that defendant had not been able to dispose of his place for one-half cash, and that the vitality of this factor in the transaction had ebbed to the extent of $20,000

156 LA.—3

cash, when the act of sale was passed, January 17, 1920.

Such a defense, therefore, necessarily loses its force as a reason for tendering the sum of $2,500, or one-half of the original commission agreed upon, or as a circumstance tending to corroborate the testimony of defendant as to any new and independent agreement as to the commission to be paid by him.

If defendant had been really unwilling to sell at less than one-half cash, he would, unquestionably, have refused to sign a deed for a less sum. Defendant admits that, when Albert Grace came to see him November 24, 1919, they entered into an agreement by which the place was to be sold for $135,000, and $5,000 commission was to be paid.

Although defendant testifies that this agreement expired after two weeks, which is denied by Albert Grace, defendant admits that Albert Grace rang him up on January 14, 1920, and asked him if it would be all right to bring down a buyer. To this defendant assented.

Defendant testifies that nothing was said at the time by either party as to terms, conditions, or commissions.

Ed. Grace, a member of plaintiff company, accompanied Dr. Benson, and H. M. Hawthorne, who was co-operating on this particular occasion with said company, called on defendant at his home, introduced Dr. Benson to the defendant as the prospective purchaser, and he agreed to pay $135,000 for the property. Defendant testifies that, while Dr. Benson with Hawthorne were in the field and looking at the property, he rang up Albert Grace and told him that the buyer was there, and that he could sell him, provided the cash payment was reduced, and, if the price was reduced, he "could not pay him more than $2,500."

Defendant would have it appear also from his testimony in the case that there was offering and bargaining about the purchase

price at the house before it was agreed upon, and before Dr. Benson inspected the property. Albert Grace testifies that on January 13, 1920, he received a telephone message from Hawthorne at Baton Rouge, La., inquiring if the McManor plantation was still on the market on the same terms and conditions that it had been offered to him, and that witness rang up defendant and asked him if the property was still for sale upon the same terms and conditions, stating that he had a buyer for the place, and that defendant replied that it was, and requested that the purchaser be brought down to the plantation. This was the day before the sale to Dr. Benson. Hawthorne testifies positively that Ed. Grace, who drove him and Dr. Benson to the place in his automobile, introduced Dr. Benson to the defendant, stating to him:

"I have some other business to attend to, and I am going to leave Mr. Hawthorne here to go over the place with Dr. Benson, and it's up to you to make the bargain with him. I told him what the bargain was."

There was no offering or bargaining whatever on this occasion as to the price of the place, $135,000. Defendant stated that he would not take less than $50,000 cash, and Dr. Benson rejoined that he would not pay more than $40,000 cash. Defendant then said that he would reduce the cash payment to $45,000, and Dr. Benson replied:

"No, I don't want to look at the place, unless you accept $40,000 cash, and five notes payable annually and the privilege of on or before."

Mr. Noel (defendant) ordered the horses, and Dr. Benson says its no use to go out there until you are willing to accept those terms, and he (defendant) said, "Get the horses."

The testimony of Ed. Grace shows clearly that he notified defendant of the terms offered by him to Dr. Benson. The defendant had closed the sale before he even rang up Albert Grace over the telephone. The terms that defendant insisted upon, $50,000 cash and the balance in five notes, were the same terms at which the property had been originally listed with plaintiff company. There was no new or independent contract made. The defendant received $135,000 for his place through the efforts of the plaintiffs, and owes them a commission of $5,000, as agreed upon.

After closing the deal, defendant arbitrarily fixed the commission at $2,500, when he had obtained the full price for his property.

[1] Although defendant consented to reduce the cash price 20 per cent., he has cut the commission of plaintiffs' 50 per cent., without their consent. If Albert Grace consented over the telephone to accept $2,500 as a commission, it is inexplicable that he denies such acceptance, that he wrote a letter on January 16, 1920, before the deed from the defendant to Dr. Benson had been passed, refusing to reduce the commission, and has declined a certified check for the amount, both before and since the institution of this suit. The plaintiffs have not attempted to take any advantage whatever of the defendant. They have offered to accept his note for $5,000, payable in one year, which the defendant has declined to give. This is not a case where an attempt has been made to prove a contract above $500 by only one credible witness. Defendant judicially admits in his answer that there was such a contract, but contends that it had ended. Defendant admits that plaintiffs found the purchaser for the property, and introduced him to defendant; that the property was sold for the purchase price originally agreed upon; but attempts to reduce the commission from $5,000 to $2,500, after the deal had been closed, under the pretext that the original contract had expired, and that a new and

independent agreement had been entered into between the parties. Defendant having admitted the contract to pay plaintiff company a commission of $5,000 on the sale of his plantation for $135,000, the burden of proof is on defendant to establish the fact that this agreement expired by limitation 2 weeks afterwards. The expiration of the contract is denied by plaintiff company, the alleged new agreement to pay a commission of $2,500 is also denied, and there is no corroboration of the testimony of defendant.

This is not a case where a real estate agent has closed a deal, contrary to the terms given to him by his principal, and is seeking to bind his principal and collect a commission; but it is a case where the agent has produced a purchaser who has bought the property of his principal for the full purchase price, and the principal himself has reduced, not the purchase price, in order to consummate the sale, but merely the amount of the cash to be paid on the purchase price.

[2] To deny to plaintiffs their full commission under such circumstances would be to allow defendant to enrich himself at their expense, in violation of all equitable considerations, and in the very face of an admitted contract, the termination of which prior to the sale defendant has pleaded, but has failed to establish by satisfactory and sufficient proof.

The judgment of the lower court restricting the commission of plaintiff company to $2,500 is erroneous under our appreciation of the facts of the case.

It is therefore ordered, adjudged, and decreed that the judgment appealed from be annulled, avoided, and reversed, and it is now ordered, adjudged, and decreed that there be judgment in favor of the plaintiff, the Grace Realty Company, a commercial and real estate partnership, and in favor of its individual members, Charles E. Grace and Albert L. Grace, in the full sum of $5,000, with legal interest on said sum from January 17, 1920, until paid, and all costs of suit.

Rehearing refused by Division C, composed of Justices OVERTON, ST. PAUL, and THOMPSON.