(101 South. 723)

No. 24302.

## J. R. GRAND AGENCY, Inc., v. STARING.

(March 31, 1924. Rehearing Denied by the Whole Court Nov. 3, 1924.)

*(Syllabus by Editorial Staff.)*

Brokers ☞57(2)—Broker held entitled to 5 per cent. of selling price of realty sold by owner to purchaser procured by broker.

Where broker, employed to procure purchaser at $80,000, sent customer to owner and notified owner to protect commissions, included in the price quoted to purchaser, owner who then sold to such purchaser for $80,000 *held* liable to broker for 5 per cent. of $80,000, the usual commission.

O'Niell, C. J., and Overton, J., dissenting on rehearing.

Appeal from Twenty-Second Judicial District Court, Parish of East Baton Rouge; H. F. Brunot, Judge.

Action by the J. R. Grand Agency, Inc., against Joseph Staring. From an adverse judgment, plaintiff appeals. Annulled, avoided, and reversed, and judgment rendered for plaintiff.

Cross & Moyse and H. Payne Breazeale, all of Baton Rouge, for appellant.

Laycock, Borron & Laycock, of Baton Rouge, for appellee.

By Division B, composed of Justices DAWKINS, LAND, and LECHE.

Justice LECHE being absent on account of illness, Mr. Justice ROGERS of Division A heard the argument and took part in the decision in the following case.

LAND, J. Plaintiff company sues the defendant, Joseph Staring, for a commission of $5,195, or $5 per acre, for the sale of the Woodstock plantation owned by defendant, and situated in the parish of East Baton Rouge. The place consisted of 1,039 acres.

Plaintiff advertised the property on December 6, 1919, and found a prospective purchaser, D. B. Burden, to whom the same was priced at $85 per acre. After finding the prospective purchaser plaintiff company, through its representative, N. K. Knox, communicated with defendant over the telephone, advising defendant that it had interested Burden in the purchase of the plantation, at the price of $85 per acre, and requested defendant to protect petitioner in its commission of $5 per acre.

On December 17, 1919, this telephone message was confirmed by a letter from Knox to defendant. Between December 17 and December 25, 1919, Burden visited the defendant, for the purpose of negotiating with him for the purchase of the place, but the sale was defeated by defendant by including other property, which the prospective purchaser did not desire to buy. Burden was in North Louisiana during the Christmas holidays. On January 3, 1920, he returned home and defendant resumed negotiations with him on that day for the sale of the "Woodstock Plantation," and on the same basis as the original offer of $80,000 net. From this sale, the additional property to which Burden had objected during the first negotiations was excluded. Deed was made by defendant January 31, 1920, without any notice to plaintiff company, which still occupied the relationship of agent or broker for the sale of the property, as far as defendant was concerned. Defendant not only did not protect the commission of petitioner, but afforded it no opportunity, by timely notice, to do so.

In the event the court should hold upon this state of facts that the commission stipulated is not due to petitioner, then, in the alternative, petitioner avers that, as it was the procuring cause of said sale, and that as defendant received the benefit of the services and expenditures of petitioner to consummate said sale, defendant is liable to petitioner in the sum of 5 per cent. on the amount of the purchase price, the usual and customary commission paid to real estate agents affecting sales of property.

Defendant denies that he employed plaintiff to sell the Woodstock plantation in the month of December, 1919, or that he authorized the advertisement of the property, or that he agreed to pay the plaintiff a commission on the sale of the property.

Defendant listed his place for sale with plaintiff company at $80,000 net, and actually sold the property to a prospective purchaser procured by said company, after he was notified of the name of the purchaser, and requested to protect the commissions, which were in addition to the purchase price, It is immaterial that there was no specific contract for the payment of a commission. The obligation of defendant to pay a commission in such cases arises from the fact that he took the sale out of the hands of plaintiff company and disposed of the property to the prospective purchaser found by plaintiff, while the relationship of broker still existed, without any notice given to plaintiff, or opportunity afforded it to protect its commission. The obligation to pay commissions, in such cases, arises purely from equitable considerations and operation of law, and is based upon the equitable maxim that no one is permitted to enrich himself at the expense of his neighbor. The services and expenditures of plaintiff com-

pany, inured to the benefit of defendant, and he must pay for same. In all cases of this kind, plaintiff is allowed to recover a remuneration for his services in proportion to what he has done. See Grace Realty Co. v. Peytavin Planting Co., Inc., (No. 24,383 on the docket of this court) 156 La. 93, 100 So. 62, and this day decided.

Where a broker has been employed to procure a purchaser, and, as in this case, has sent his customer directly to the owner, with whom to conclude the sale such owner cannot defeat the broker's right to commissions by selling to the purchaser procured by the broker at a price below that quoted by the broker. Such an act is declared by the decisions to be a gross injustice, and a fraud upon the broker. Chilton v. Butler, 1 E. D. Smith (N. Y.) 150; Keys v. Johnson, 68 Pa. 42; Rees v. Spruance, 45 Ill. 308, cited in note to Ball v. Dolan, 15 L. R. A. (N. S.) 273.

Plaintiff company had quoted the price of $85 per acre to the prospective purchaser, and had notified defendant of this price before any negotiations had taken place.

It is generally held that the right of a real estate broker to his commission is not affected by a sale of the property by the owner himself at a less price than that for which he had authorized the broker to sell, where he interfered and made such sale to the broker's customer, pending negotiations which, to his knowledge, had been begun with the purchaser by the broker, thus preventing the broker from completing the sale. Williams v. Bishop, 11 Colo. App. 378, 53 P. 239; Williams v. Bishop, 17 Colo. App. 503, 68 P. 1063; Schlegal v. Allerton, 65 Conn. 260, 32 A. 363; Spotswood v. Morris, 10 Idaho, 129, 77 P. 216; McConaughy v. Mahannah, 28 Ill. App. 169; Heaton v. Edwards, 90 Mich. 500, 51 N. W. 544; McGovern v. Bennett, 146 Mich. 558, 109 N. W. 1055; Delta & P. Land Co. v. Wallace, 83

Miss. 656, 36 So. 263; Hobbs v. Edgar, 23 Misc. Rep. 618, 51 N. Y. S. 1120; Barnes v. German Sav. & L. Soc., 21 Wash. 448, 58 P. 569; Stewart v. Mather, 32 Wis. 344; Oliver v. Katz, 131 Wis. 409, 111 N. W. 509.

Had defendant, as was his duty to do, protected the commissions of the plaintiff company in this case, and sold for the price fixed by the broker, the property would have brought the sum of $85,195, instead of the less sum of $80,000 net. Plaintiff company is therefore entitled to recover the sum of 5 per cent., the usual commission paid real estate brokers, on the sum of $80,000; i. e., $4,000 as its commissions.

In our opinion the judgment of the lower court rejecting plaintiff company's demand in toto is erroneous.

The case of Ford v. Shaffer et al., 143 La. 635, 79 So. 172, has no application to the facts of the present case. In the Ford Case, 10 months had elapsed without the agent effecting a sale, and his effort could not be considered a procuring cause of the sale. In the case before us, scarcely two weeks had passed, from December 17, 1919, to January 3, 1920, before the second negotiations began between the defendant and the prospective purchaser of plaintiff company, resulting in the sale at the price of $80,000 net.

It is unimportant in this case that the offer of defendant was for a net price, and that he reserved the right to sell the property on his own account. This phase of the law is fully considered, and decided adversely to defendant's contention, in the Grace Realty Company case cited in this opinion.

It is therefore ordered, adjudged, and decreed that the judgment appealed from be annulled, avoided, and reversed, and it is ordered that there be judgment in favor of plaintiff company and against defendant in the full sum of $4,000, with interest on said

sum at the rate of 5 per cent. per annum from January 31, 1920, until paid; defendant and appellee to pay all costs of suit.

### On Rehearing.

By the WHOLE COURT.

ST. PAUL, J. A re-examintion of this case satisfies us that our former opinion and decree are correct, and should be reinstated.

### Decree.

It is therefore ordered that our former decree herein be now reinstated, and made the final judgment of this court.

O'NIELL, C. J., and OVERTON, J., dissent, being of the opinion that the judgment should be affirmed.

BRUNOT, J., recused.