No. 2783

Second Circuit

ATKINS v. ANISMAN

(July 1, 1929. Opinion and Decree.)
(October 1, 1929. Rehearing Refused.)

Clifton ·F. Davis, of Shreveport, attorney for plaintiff, appellee.

Hugh C. Fisher, of Shreveport, attorney for defendant, appellant.

REYNOLDS, J. Plaintiff seeks judgment against defendant for the sum of $500 with legal interest thereon from October 20, 1924.

He alleges that he was a duly licensed realtor and that Eugene Kelly was his duly licensed salesman, and that during the. month of October, 1924, defendant employed him, through his salesman, Kelly, to find a purchaser for certain real estate situated in the city of Shreveport, La., belonging to him, at the price of $12,000, and agreed to pay plaintiff $500 for finding him a purchaser for the property at that price; that Kelly showed the property to Mrs. Adele Miriam Conway, wife of J. McD. Dufilho, and named the price at which it was for sale, and notified defendant that he had done so, and that defendant had afterward sold the property to Mrs. Adele Miriam Conway Dufilho at that price on October 20, 1924.

Defendant admitted making the agreement with Kelly and alleges that plaintiff's name was not mentioned in the transaction and that he was not aware that Kelly was a salesman for plaintiff; that while Kelly had the right to sell the property and earn the commission for himself or plaintiff, neither Kelly nor the plaintiff sold it; that Kelly nor plaintiff ever mentioned the name of Mrs. Dufilho to him and that he was not aware that Kelly or plaintiff was negotiating with her to sell her the property; and that during the same time one Sam Carey had authority to sell the property for him at the price named and that Carey did sell it to Mrs. Dufilho and that he paid Carey a commission of $500.

On these issues the case was tried and there was judgment in favor of the plaintiff and against the defendant for the sum sued for and defendant appealed.

## OPINION

The right of plaintiff to recover for the services of Kelly in finding a buyer for the property and introducing that buyer to defendant is not questioned, and the only issue before the court is one of fact, namely; did Kelly bring the property to the attention of Mrs. Dufilho and did he inform defendant that he had done so.

Kelly testified that defendant listed his property with him for sale at $12,000 and agreed to pay him a commission of $500 for finding him a buyer for it; and—

"Q. Did you do anything toward selling that property?

"A. Yes; I advertised the property, and solicited a buyer and learned through Mr. L. E. Jones that Dufilho was a partner— Mr. Jones was Dufilho's partner, and I was trying to sell to Mr. Jones, and he told me that Mr. Dufilho was the one to go to, and I talked it over with Mr. Dufilho and got him interested in it, interested in the Anisman house.

"Q. After you had gotten in communication with Mr. Dufilho, then what happened?

"A. I made arrangements with him to show it and showed it to him and his wife together; took them out to see the property.

"Q. Did you tell them the price of the property?

"A. Yes, sir.

"Q. After you showed them the house, what happened?

"A. I asked Mr. Dufilho if he liked it, and he said to see his wife, that if it suited her, it suited him.

"Q. Did you have any communication with Mr. Anisman while in the house that time?

"A. Yes; I called up, after we looked through the house, I called up the store and told the Anismans that I had a purchaser there looking through the house."

J. McD. Dufilho testified that he was the person who had bought the property from defendant, testified that Kelly was the first person to show him the property and that his wife was present when he inspected it and that he found on the property a Mrs. Anisman, either the wife or the mother of defendant.

"Q. After you examined the house, what notice did you give Mr. Kelly as to whether you would take the house or not?

"A. We did not give him notice; as to whether we would take it or not; but we would let him know next day whether we would do it or not.

"Q. Did you let him know?

"A. No. I don't think that I did. I am inclined to believe that I told Mr. Kelly that I was leaving town for a few days, and wanted to get an option while I was away.

"Q. Did Mr. Kelly get that option for you?

"A. Never heard anything more from him.

"Q. How came Sam Carey in the proposition?

"A. I came to town and called Sam Carey; called him up; because I had known him in New Orleans; and asked him to come to see me, that I was in the market for a place, and wanted to know what he had; and he came to see me.

"Q. Just state to the court what things took place between you and Sam Carey.

"A. When he came, I asked him what he had for sale, and among other places he told me of the Anisman place, and we discussed the matter and I told him that I had already seen the place, shown us by Mr. Kelly, that Kelly thought he had the exclusive right; and he said that he did not, that he could sell the place to me, and showed me the advertisement in the Sunday paper previous to that, advertising the property for sale; we discussed the matter and I saw Sam Carey the next day and made an appointment with Mr. and Mrs. Anisman to go there at night, when we could look over the place and talk the matter over again and definitely see what arrangement could be made about the place.

"Q. Kelly showed you the place before Carey did?

"A. Yes, sir.

"Q. And the Anismans knew that?

"A. I don't remember whether they

knew it or not; I told him that I had been there with Kelly.

"Q. Was that before or after closing with Anisman, that you told him that you had been there with Mr. Kelly?

"A. That was before the trade was made with Mr. Carey.

"Q. Before Anisman made the deal?

"A. Yes, sir."

The defendant Anisman testified:

"Q. Did Mr. Dufilho tell you that he had been to your house with Mr. Kelly?

"A. Mr. Dufilho said that he had seen the house through Mr. Kelly; he told me that a little later on in the transaction.

"Q. That was before you paid the commission to Carey?

"A. Of course Carey was handling it; sold the house for me.

"Q. That is not the question I asked you. I asked you if you knew about the Dufilhos; if Mr. Dufilho told you that Mr. Kelly has shown him the house?

"A. In the conversation, he said that he was trading with Kelly; that he knew him.

"Q. Dufilho said that he was trading with Kelly?

"A. Yes, sir; of course, he was.

"Q. He told you that Kelly had shown him the house, did he not?

"A. What was it to me that Kelly had shown him the house.

"Q. You deny that Mr. Kelly showed the house to Mr. Dufilho before Mr. Carey did?

"A. I don't know.

"Q. You know that he showed it?

"A. Yes; he came in and said that he had showed the house; that is all I know; said that he had a prospect that wanted an option."

After denying that Kelly had mentioned the name of Dufilho as the person to whom he expected to sell the property, the witness said that he had sold real estate before through brokers without learning the name of possible buyers from them; that—

"It didn't interest me; I didn't know who he was; I would not ask them; I don't ask them who their prospect is; lots of times you would ruin a sale if you did. It is not necessary * * * It is not absolutely necessary for the owner to know who it is; if I would show I was too anxious to sell, then it would ruin it; the real estate man is the one to sell; it is absolutely not necessary who their prospects are."

The district judge who heard and saw the witnesses testify was of the opinion that Mr. Kelly had found a buyer in Mr. Dufilho for defendant's property and had communicated the fact to defendant, and so are we; and the defendant having sold the property to Mr. Dufilho at the price at which he authorized Mr. Kelly to sell it he owes the brokers' commission.

"Where broker procured purchaser who bought property for agreed price directly from principal, the broker was entitled to the agreed commission."

Grace Realty Co. vs. Noel, 156 La. 63, 100 So. 57.

Grace Realty Co. vs. Peytavin, 156 La. 93, 100 So. 62.

J. R. Grand Agency vs. Starling, 156 La. 1094, 101 So. 723.

And the fact that defendant paid a commission to Carey in the transaction does not affect plaintiff's right to recover his commission.

Neale vs. Trahan, 153 La. 98, 95 So. 415.

Gottschalk vs. Jennings, 1 La. Ann. 5, 45 Am. Dec. 70.

The judgment appealed from is correct and is therefore affirmed.