## BENJAMIN CUNLIFF, Respondent, v. ALBERT C. HAUSMAN, Appellant.

### St. Louis Court of Appeals, December 23, 1902.

1. **Practice, Trial: PRACTICE, APPELLATE: VERDICT: APPELLATE COURT.** Where the verdict is for the plaintiff the evidence should be viewed by the appellate court in its most favorable aspect in support of the verdict.

2. **Commissions of Real Estate Agent: EVIDENCE.** Where the evidence tends to prove that plaintiff, in an action for commissions for the sale of real estate, set on foot inquiries and negotiations that finally culminated in the sale of the real estate; that the plaintiff brought the buyer and seller together, he is entitled to his commissions.

Appeal from St. Louis City Circuit Court.—*Hon. William Zachritz,* Judge.

AFFIRMED.

### STATEMENT.

The cause was first tried in the justice's court, where it originated, on the following statement:

"St. Louis, Mo., May 24, 1901.
"Albert C. Hausman,
"To Benjamin Cunliff, Dr.:
"To services rendered as real estate agent, procuring purchaser for sale of lots seven and eight, of city block 3861, 100 feet on south side of Cabanne avenue; commission two and one-half per cent on selling price, $9,000 ........................ $225.00
"Received payment."

On a new trial in the circuit court (where the cause was taken by appeal) to the court sitting as a jury, plaintiff recovered judgment from which defendant appealed.

Briefly stated, the facts are, that defendant owned a vacant lot on Cabanne avenue, in the city of St. Louis, which was for sale and was in the hands of J. I. Epstein, a real estate broker, and on which, for over two years, he had posted a sign "For Sale;" that W. F. Little had seen the lot with the sign "For Sale" posted on it and was desirous of buying it but did not know to whom it belonged or the price of it. D. W. Hewitt, a real estate broker, was in the office of Little in February, 1900, when Little asked him to find out who owned the lot and the price of it. Hewitt agreed to do this and went to plaintiff, also a real estate broker, for information on account of his superior knowledge in respect to property in that part of the city. Plaintiff showed Hewitt a plat of the lot, told him that defendant owned it and called up defendant by telephone and asked him the price of the lot and said to him that he had a prospective purchaser in the person of Little. Defendant told plaintiff that the price was $90 per foot and to go ahead and sell it. Hewitt was present during this telephonic conversation and went back to Little's office and told him that defendant owned the lot and the price.

Thus far Hewitt and Little agree in their testimony but give different account of what took place afterwards.

Hewitt testified that when he reported the price that Little said it was cheap enough and asked if he could trade in a lot that he owned on Von Versen

avenue; that he (Hewitt) told Little it was not a trading proposition and Little replied, "We will take the matter up later on; I am busy now with some other matters."

Hewitt further testified that he went back to Little's office two or three times after this on other business and mentioned the Cabanne lot to him, and Little said, "Let it drop now, we will take it up later."

Little testified that Hewitt knew he was in the market for a lot and mentioned several other lots to him when he (Little) suggested this lot, and that when he reported the price of the lot to him he told him he would not pay that price for it and considered the matter ended at that time and had nothing more to do with Hewitt about the lot; that about May 10, 1900, Little went into Epstein's office and bargained for the lot for about $88.50 per front foot, and a few days afterwards the deal was closed by defendant conveying the lot to Little.

At the time the contract of sale was made defendant did not know the name of the purchaser nor did he learn it until he came to Epstein's office to sign the deed and he testified that at that time it did not occur to him that Little was the name communicated to him by plaintiff as a prospective purchaser; that if it had occurred to him he would not have made the deed because, to use his own language, "I would not go to work and sell my lot through another real estate agent when I thought another one had a possible claim on the sale."

At the instance of plaintiff the court declared the law as follows:

"1. The court, sitting as a jury, declares the law to be that if it finds from the evidence that the plaintiff's agency was the procuring cause of the negotiations between defendant and Little, which resulted in a sale of the defendant's property, the plaintiff is entitled to recover, even though it may further find that the negotiations were made with the defendant, and without his knowledge that plaintiff's agency was the procuring cause of such negotiations.

"2. The court, sitting as a jury, declares the law

to be that if it finds from the evidence that Little was brought to a negotiation with the defendant which resulted in the sale of the defendant's property, from information given him by Hewitt, and derived by Hewitt from the plaintiff while plaintiff was acting as the agent of the defendant in relation to said property, then the plaintiff is entitled to recover.

"3.    The court, sitting as a jury, declares that if it finds from the evidence that the plaintiff's agency was the procuring cause of the negotiations between the defendant and Little, which resulted in an exchange of the defendant's property, the plaintiff is entitled to recover, even though it further finds that the negotiation was concluded through Epstein.

"4.    The court, sitting as a jury, declares the law to be that if it finds from the evidence that the customary commission on selling property in the city of St. Louis is two and one-half per cent upon the selling price thereof, then if the plaintiff was entitled to recover under the other declarations of law herein, he should have judgment for the sum of $225, together with interest from the date of filing until June 18, 1901, at six per cent."

Defendant moved the court to declare the law as follows:

"1.    The court instructs that under the law and the evidence adduced by the plaintiff in this case the plaintiff can not recover.

"2.    The court declares that under the law and all the evidence in the case the plaintiff is not entitled to recover and the finding must be for the defendant.

"3.    The court declares that unless the plaintiff actually sold the defendant's lot or produced to the defendant a buyer for it, ready, willing and able to purchase on the terms authorized by defendant, or unless the court finds from the evidence that the plaintiff before May 22, 1901, informed the defendant that he had such a purchaser and disclosed his identity, and that the defendant then went to such purchaser and sold the lot without the intervention or assistance of plaintiff, the judgment must be for the defendant.

"4. The court declares that if the evidence shows that when the witness Hewitt approached the purchaser Little for the purpose of selling him the defendant's lot, no definite agreement was made by said Little to purchase said lot and that said Little then abandoned the purchase, then plaintiff can not recover unless after that time he procured a valid and binding agreement from a solvent purchaser to buy the lot upon the terms authorized by defendant or produce to him a purchaser, ready, willing and able to buy said lot,'' which the court refused.

*Chas. W. Holtcamp* and *G. B. Webster* for appellant.

(1) Plaintiff did not make out a case in assumpsit. It was an essential element of his case that defendant knew at or before the sale that the purchaser was the same person to whom Cunliff had previously tried to sell the property, and there was no proof of that. The law does not raise an implied promise to pay where there is no knowledge of an existing right to receive payment. Pool v. Adkisson, 1 Dana 117; Glenn v. Savage, 14 Ore. 577; Boston Ice Co. v. Potter, 123 Mass. 28. (2) Plaintiff was not the procuring cause of the sale. Ramsey v. West, 31 Mo. App. 689; Crowley v. Somerville, 70 Mo. App. 376; Baumgarti v. Hayne, 54 Ill. App. 501; Earps v. Cummins, 54 Pa. St. 394; Donovan v. Ives, 73 Ga. 301; Platt v. Johr, 9 Ind. App. 58; Wooley v. Buhler, 73 Hun 158; Sibbad v. Iron Co., 83 N. Y. 378; Hay v. Platt, 66 Hun 488. (3) The services rendered by the broker must be the procuring cause of the sale; in other words, the *causa causans.* Ramsey v. West, 31 Mo. App. 689. (4) Plaintiff's first and second declarations should not have been given because they permitted a recovery regardless of whether or not he was the procuring cause of the sale and authorized a verdict if he was only a remote cause in the chain of events which led up to the sale. The peremptory declarations offered by the defendant should

have been given.    He was not entitled to recover under
his own theory, upon the foregoing authorities.    (5)
It was prejudicial error to admit over the objection of
the defendant the testimony of plaintiff and of the wit-
ness Hewitt as to the conversations between themselves
out of the presence of the defendant.    That testimony
was wholly incompetent by all the rules of evidence.
1 Greenleaf, Ev. (15 Ed.), sec. 99; 1 Phillips, Ev., 143;
Wilson v. Hempstead, 72 Mo. App. 656; Young v. Gobe,
15 Wall. 562; Mulford v. Caesar, 53 Mo. App. 263.

*Jones, Jones & Hocker* for respondent.

The plaintiff was the procuring cause of the nego-
tiations which consummated the sale of the defendant's
property and therefore, under the authorities, is en-
titled to his commission.    Tyler v. Parr, 52 Mo. 250;
Timbermann v. Craddock, 70 Mo. 638; Gellatt v. Ridge,
117 Mo. 553; Grether v. McCormick, 79 Mo. App. 325.

BLAND, P. J.—The contention of the defendant is,
that plaintiff was not the procuring cause of the sale.
The verdict being for plaintiff the evidence should
be viewed in its most favorable aspect in support of
the verdict.    Hewitt, for the purpose of finding out the
owner and the price of the lot, represented Little; what
he did, in this respect, Little did.    Little, through Hew-
itt, went to plaintiff and through plaintiff was put in
communication with the owner and learned the price of
the lot and the fact that plaintiff was authorized by the
owner to sell the lot at $90 per front foot.    Little, for
the reason that he had other matters on hand requiring
his immediate attention, postponed the proposition to
sell the lot at $90 per foot until he got ready to take up
the matter.    When he was ready to take the matter up
he went to Epstein, another real estate agent of defend-
ant who was known to Little to have authority to sell
the lot, and made the purchase from him without notice
to plaintiff or Hewitt, and defendant approved the sale
at a price less than he had given plaintiff.    The trans-

action was not different than it would have been had Little gone to defendant and negotiated the sale with him in person, instead of going to his agent and making the purchase.

The evidence, therefore, tends to prove that plaintiff set on foot inquiries and negotiations that finally culminated in the sale; in other words, that he brought the buyer and seller together, if so he is entitled to his commission. Veatch v. Norman, 95 Mo. App. 500, 69 S. W. 472.

The judgment is affirmed. *Barclay* and *Goode, JJ.,* concur.