No. 9464.

## MILLAGE *v.* IRWIN.

1. REAL ESTATE BROKER—*Right to Compensation.* The broker who produces the purchaser, and is the procuring cause of the sale is entitled to the commisson, even though the sale is in fact accomplished by another. Defendant listed his land for sale with plaintiff, and with another, at a price lower than that named to plaintiff, one Richardson. Richardson sold the land to a purchaser whom plaintiff had brought to the country and to whom he had exhibited the land, and who would have purchased from him, but for the lower price named to Richardson. Plaintiff was entitled to his commission.

2 INSTRUCTIONS—*Construed.* An instruction the plaintiff was entitled to recover if his failure to consummate the sale was "due to the act of defendant," approved.

3. TRIAL—*Matters Not in Issue.* Real estate broker suing for an agreed commission, the *quantum meruit* is not involved.

*Error to Phillips District Court, Hon. Haslett P. Burke, Judge.*

Mr. CLAUDE D. WALROD, Mr. W. W. GARWOOD and Mr. OMAR E. GARWOOD, for plaintiff in error.

Messrs. MUNSON & MUNSON, for defendant in error.

Mr. Justice Allen delivered the opinion of the court.

THIS is an action brought by W. L. Irwin, a real estate broker, against R. J. Millage, to recover an agent's compensation, alleged to be due to plaintiff as the result of circumstances surrounding the purchase, by one William Meusborn, of a tract of land which the defendant, Millage, had listed for sale with the plaintiff, Irwin. A verdict was rendered, and a judgment entered, in favor of the plaintiff. The defendant brings the cause here upon writ of error.

The principal contention of the plaintiff in error, defendant below, is to the effect that the judgment, or any judgment for the plaintiff, is not warranted by the facts existing in this case. The principal facts which are determinative of this cause are not in dispute, but the controversy is in relation to the rule or rules of law which should be applied in deciding whether or not the plaintiff is entitled to an agent's commission or compensation.

On September 18, 1916, the defendant listed his land with the plaintiff by a memorandum, in writing, as follows: "Holyoke, Colo., Sept. 18, 1916. I have this day listed with W. L. Irwin my half section east half of 19-7-44 at twenty-nine net to me terms as can be agreed upon with March 1, 1917, settlement. R. J. Millage." It further appears that at the times herein mentioned, the defendant

also had his land listed for sale with another agent, one J. G. Richardson. The plaintiff did not consummate a sale with any prospective purchaser, but some time in December, 1916, Meusborn purchased the land through the agent Richardson.

The mere fact, however, that the sale was made by the agent Richardson, is not sufficient to preclude the plaintiff's right to recover. It is the broker who first produces a customer and is the procuring cause of the sale who is entitled to the commission. 9 C. J. 616. In other words, the compensation belongs to that agent "whose efforts were the primary, proximate and procuring cause of the deal negotiated." 4 R. C. L. 319, sec. 57; Beougher v. Clark, 81 Kan. 250, 106 Pac. 39, 27 L. R. A. (N. S.) 198. This principle has been recognized in this state, and applied, in Witherbee v. Walker, 42 Colo. 1, 93 Pac. 1118; Williams v. Bishop, 11 Colo. App. 378, 53 Pac. 239.

It was the plaintiff, and not the agent Richardson, who first showed the defendant's land to the purchaser in question. Furthermore, the evidence shows that Muesborn came from his home in Cedar Rapids, Nebraska, to Holyoke, Colorado, for the purpose of purchasing land, not in any degree as the result of any efforts made by Richardson, but to some extent came in consequence of the efforts of the plaintiff, working in conjunction with one Van Wormer, a real estate agent of Bladen, Nebraska. Some time in October, 1916, Van Wormer, it was testified by plaintiff, "brought out two auto loads of men" to Holyoke, Colorado, and among these men was Meusborn. It was on that occasion that Muesborn first saw the defendant's property, being taken to it by the plaintiff.

Some time in December, 1916, and on a Saturday, Meusborn again came to Holyoke, this time by rail, and was met at the train by the plaintiff. As to showing defendant's property to Meusborn on this occasion, the plaintiff testified: "I went and got my car and showed them (Meusborn and another) all around out west here, and then came to Mr. Millage's (the defendant's) place and

showed them that place and dug a hole in about two or three feet until they was satisfied with the soil and said it was fine and just what they wanted and just the distance from town and they liked it fine." On the Saturday in question, it was agreed by and between the plaintiff and the defendant that the plaintiff should price the land to Meusborn at $30 per acre, and plaintiff did so. There is no evidence that Meusborn was dissatisfied with such price, or that he expressed an unwillingness to deal at that figure. On the evening of that same Saturday, the plaintiff introduced Meusborn to the defendant, the vendor of the land, and the defendant himself priced the land to Meusborn at $30 per acre. Meusborn would not buy that evening because, as plaintiff testified, he first wanted to see what is referred to in the testimony as "the Amherst country." All of the occurrences above mentioned were before Meusborn met the agent Richardson. After this time, and probably on the following Monday, Meusborn met Richardson, and purchased the land from him at $28.50 per acre. Meusborn testified that the only reason why he did not buy defendant's land from the plaintiff agent was because he was able to obtain the property "cheaper from the other party," Richardson.

There is no evidence whatever in the record that the sale could not have been consummated by the plaintiff, at $30 per acre, if Meusborn, the prospective purchaser, had only the plaintiff as the agent with whom to deal, and had not met and subsequently negotiated with another agent of the defendant. On the other hand, the evidence fairly shows that until Meusborn met the agent Richardson, he continued to have under consideration the purchase of the defendant's land through the plaintiff at $30 per acre.

The facts above recited are analogous to those existing in the case of *Williams v. Bishop, supra,* and under the reasoning of our Court of Appeals in that case, when applied to the facts in the instant case, the plaintiff should be deemed to be the procuring cause of the sale, and, for that reason, entitled to his commission.

While the instructions to the jury do not expressly state that the plaintiff is entitled to recover only in the event that he is or was the procuring cause of the sale, the instructions as given are equally as fair to the defendant. The instructions are to the effect that the plaintiff is entitled to recover if the failure of the purchaser to deal or consummate the sale with the plaintiff was due to "the act of the defendant." Under such instructions the evidence amply warrants a verdict for the plaintiff. In *Idelson v. Robinson*, 27 Colo. App. 508, 150 Pac. 322, it was said: "The defendants rely, * * * that, when real property is placed in the hands of rival agents, the seller is only liable to the one who consummates the sale, there being no exclusive agency. This is a true proposition of law, if the seller remains neutral as to the rival agents, and gives each of them an equal opportunity to bring the parties together and consummate the sale."

The defendant listed his property with the plaintiff at $29.00 net to defendant, and expressly authorized the plaintiff to price the land at $30 per acre. At the same time the defendant had the property listed at $28, net, with "other agents", among whom was Richardson. The defendant was not, therefore, neutral between the plaintiff and the agent Richardson. It is held, in effect, in *Bellis v. Hann* (Tex. Civ. App.), 157 S. W. 427, that giving one agent a less figure at which to sell property than that given to another agent, is an interference in favor of the one agent to the disadvantage of the other.

The verdict and judgment, so far as the same find the plaintiff entitled to compensation, are undoubtedly correct. In 4 R. C. L. 320, sec. 57, the rule applicable to the facts existing in this case is stated as follows: "Where a prospective purchaser has been introduced to the owner by one broker and the negotiations are pending and have not fallen through, the owner cannot, with knowledge of the facts, complete the purchase with another agent, and avoid his liability for the commission due to the first broker. Thus the law will not permit one broker who has been in-

trusted with the sale of land, and is working with a customer whom he has found, to be deprived of his commission by another agent stepping in and selling to the customer for a price less than the first broker is empowered to receive." The reason for the rule is stated in *Hogan v. Slade*, 98 Mo. App. 44, 71 S. W. 1104, the court saying that were it "otherwise, any real estate agent who had borne the burden and heat of the day in working up a sale might have his reward snatched from him at the eleventh hour by his principal empowering some one else to sell at a smaller price."

The jury fixed the amount of plaintiff's recovery at $320. The defendant now contends that "neither complaint, evidence or instructions afford any basis for arriving at such amount, either upon the theory of quantum meruit or otherwise." There was no error in the amount of the verdict. The pleadings and the evidence show that a sale by the plaintiff was to net the defendant $29 per acre, and that while negotiations were pending between the plaintiff and Meusborn the defendant agreed that the land should be priced to Meusborn at $30 per acre. The defendant evidently understood that this additional $1 per acre was for commissions, or compensation to be paid to the plaintiff, since the defendant testified that he named the price at $30 per acre because the plaintiff requested it. The defendant says: "He (the plaintiff) wanted me to price it thirty dollars because he had to protect another commission." The action was for an agreed commission, and there was therefore no necessity for pleading or evidence upon the "theory of quantum meruit."

We find no reversible error in the record, and the judgment is, therefore, affirmed.

*Affirmed.*

Chief Justice Garrigues and Mr. Justice Bailey concur.