MASSACHUSETTS MUT. LIFE INS. CO. v. GEORGE & CO.

No. 12917.

Circuit Court of Appeals, Eighth Circuit.

March 8, 1945.

Rehearing Denied March 28, 1945.

Raymond M. Crossman, of Omaha, Neb. (Ralph M. West and John L. Barton, both of Omaha, Neb., and John F. Handy, of Springfield, Mass., on the brief), for appellant.

James J. Fitzgerald, Jr., of Omaha, Neb. (Seymour L. Smith, of Omaha, Neb., on the brief), for appellee.

Before GARDNER, WOODROUGH, and THOMAS, Circuit Judges.

THOMAS, Circuit Judge.

The appellant life insurance company, defendant in the district court, was at all times material to this controversy, owner of the Lassen Hotel in Wichita, Kansas, title to which had been acquired in a foreclosure proceeding. The company desired

to sell the hotel to any purchaser able and willing to purchase at a price and on terms satisfactory to the seller. On March 12, 1942, a contract of sale negotiated by the C. C. Kimball Company, real estate brokers of Lincoln, Nebraska, was entered into with A. Q. and Walter. Schimmel. The consideration received was $800,000, and a commission of $15,000 was paid to the broker.

Thereafter this action was brought against the defendant by the plaintiff-appellee, George and Company of Omaha, Nebraska, to recover a commission of 2½ per cent. of the sale price on the ground that plaintiff had earned the commission because in performance of a written contract George and Company had found, interested, and introduced the purchasers to the defendant. The case was tried to a jury and judgment was entered upon a verdict in favor of plaintiff in the amount of $20,000. This appeal followed.

The plaintiff, George and Company, is a partnership organized January 1, 1942, for the purpose of taking over and carrying on the business of George and Company, a Nebraska corporation, which was dissolved on December 31, 1941. The partners were the owners of the corporation, the change in the form of the organization being made for tax and accounting purposes. The plaintiff and its predecessor are and have been engaged in the real estate business on a commission basis in Omaha at all times material here. The plaintiff upon its organization took over by appropriate assignments all the business, good will and assets of the corporation, including the claim sued upon; and it has continued to carry on the same business at the same place with approximately the same personnel.

The petition alleges that the defendant entered into a written contract with George and Company by means of a series of 25 letters passing between the parties from April 21, 1936, to February 6, 1940, copies of which are attached to the petition, whereby it was agreed that in consideration of George and Company's finding a purchaser for the hotel property the defendant would pay a commission of 2½ per cent. of the sale price; that in performance of the contract George and Company contacted the Schimmels, interested them in the purchase of the hotel and were in negotiation with them for its purchase, with the knowledge, consent and approval of the

defendant from about April 21, 1936, to December 31, 1941; and that the plaintiff and its predecessor corporation were at all times ready, able and willing to perform whatever services were necessary or advisable to aid in consummating the sale.

The correspondence relied upon by the plaintiff to establish the alleged written contract was carried on between George and Company of Omaha and Dayton F. Glenn of Kansas City, Missouri, the defendant's Manager of Real Estate for the territory including Missouri and parts of Nebraska and Kansas where Omaha and Wichita are situated.

Based upon the issues presented by its answer, the instructions to the jury and the exceptions thereto, its motions for a directed verdict and for judgment notwithstanding the verdict and the alleged errors in the rulings thereon, the defendant presents the following contentions in this court:

1. That the letters attached to the petition do not constitute a written contract;

2. That Glenn did not have authority to make the contract in behalf of defendant; and,

Conceding only for purpose of argument that the letters do constitute a contract, defendant contends further that

3. Neither plaintiff nor its predecessor performed the contract, in that they were not the efficient procuring cause of the sale of the hotel to the Schimmels;

4. The contract was abandoned as a matter of law by George and Company, the corporation, by its letter of September 17, 1937, and by subsequent conduct;

5. The contract was terminated by the defendant by its letter of September 27, 1937, and by subsequent conduct;

6. The contract was terminated by operation of law upon dissolution of George and Company, the corporation, December 31, 1941;

7. This action is barred because, in breach of its fiduciary relations, George and Company failed to communicate to defendant an offer of $800,000 by Schimmels for the hotel in January, 1940;

8. The contract was void and not enforceable under the Statute of Frauds of Nebraska, Section 36-108, C.S.Neb.1929;

9. Neither the plaintiff nor its predecessor could maintain the action because neither of them held a broker's permit as a

licensed real estate broker in Nebraska as required by Ch. 171, Laws of Neb., 1943; and

10. There is error in conflicting instructions upon burden of proof.

The issues involved in propositions 3, 4 and 6 only were submitted to the jury. All others were ruled against the contentions of the defendant by the court as matters of law.

It is conceded that a binding agreement in writing may be created by letters between the parties, sufficient to create a contract between principal and agent for the sale of real estate although the same papers are not signed by both parties, Shoff v. Ash, 95 Neb. 255, 145 N.W. 271, and that where the entire contract is found in correspondence between the parties the court should construe it. Zehr v. Wardall, 6 Cir., 134 F.2d 805. The contention of the defendant is that the letters relied upon by the plaintiff do not show that the minds of the parties met at every point, that is, that the alleged acceptance of the defendant is not exactly responsive to the offer of George and Company. Cooper v. Kostick, 112 Neb. 816, 201 N.W. 674.

The correspondence began April 21, 1936, when in a letter addressed to "Mr. *M. F.* Glenn, Mgr., Real Estate Dept., Massachusetts Mutual Life Ins. Co., Sharp Building, Kansas City, Mo.," George and Company said, "if * * * the company desires to make a lease [on the hotel] for a term of years to a family of very successful hotel operators, or possibly a sale of same, we would be glad to have full and complete information regarding it." D. F. Glenn replied April 27, 1936, saying: "The Company is not interested in making a lease and I would say only mildly interested in making a sale." Again, on June 18, 1937, George and Company inquired "whether they would be interested in making sale of the [hotel] property. * * * If your company would be interested in negotiating for either a lease or sale along the lines mentioned we have people who would be interested in looking the property over at an early date."

Replying on June 21, 1937, Mr. Glenn said:

"It is not possible to place a price on this property without first identifying the prospective purchaser, and any price quoted would be good for only such a purchaser who had thoroughly qualified. If you have such a prospect in mind and will care to furnish his name and sufficient information to enable us to make a thorough check of his qualifications, the matter will be investigated, and, if satisfactory, a price will be quoted. * * *

"I will be glad to hear from you further in this regard."

On June 23, 1937, George and Company answered, saying: "The Schimmel hotel organization, composed of Mr. Charles Schimmel and four sons are the people referred to." After detailing the experience of the Schimmels in owning and operating hotels and their financial responsibility, the letter proceeded: "If upon receipt of this letter you feel justified in furnishing this information and willing to allow us to negotiate with them and would quote us a price so that we would be in position to negotiate we will be glad to have same. If a price is quoted on the property it should be on the basis of our receiving a 2½% commission on the selling price if sold by us."

On June 25, 1937, Mr. Glenn answered:

"I greatly appreciate your letter of June 23rd, and I am sorry that it was impossible for me to see you when I called at your office on Wednesday of this week. I had only a limited time in Omaha and it was not possible for me to get back later in the afternoon as I was tied up in Council Bluffs until long after your office had been closed. * * *

"Unfortunately I have only one set of photographs showing the Hotel Lassen and various views on the inside and outside of the building. These photographs are at present in the hands of another interested concern, but I have written today requesting that they be returned to me immediately. * * *

"In dealing on a proposition of this kind, it is not deemed advisable by the Company to quote any price until the prospective purchase[r] has had the opportunity to view the photographs and is then sufficiently interested to make a personal examination of the physical property. If the interest of the prospective purchaser is sufficient that he will make this examination, we believe then to be the opportune time to deal with figures. * * *

"A complete set of photographs will be forwarded to you as soon as they are returned to this office."

On July 10, 1937, Glenn sent a set of photographs of the hotel to. George and Company. On July 12, 1937, he wrote again describing the hotel and saying "should your clients be interested in making a personal examination of the property I will be only too glad to meet with those people and you in Wichita to go over the entire matter." George and Company answered on July 14, 1937, suggesting a date for an inspection of the hotel and adding:

"If after carefully inspecting the property the Schimmels are still interested we hope you will be prepared to quote a definite price and terms of sale on the property. The price, as stated in our letter to you of June 23rd, to cover a regular 2½% real estate commission to us in event sale is consummated."

On July 20, 1937, George and the Schimmels met Glenn and another representative of the defendant at Wichita and inspected the hotel. Thereafter correspondence and negotiations with the Schimmels through George and Company continued, but prices of $1,300,000 and $1,000,000 suggested at different times by Glenn were not acceptable to the Schimmels. Glenn never at any time in any of the correspondence referred in any way to George and Company's statement in the letters of June 23, 1937, and July 14, 1937, that any price quoted to the Schimmels should "cover a regular 2½% commission to us in event sale is consummated." Neither was a price quoted in the answers to those letters. It is not contended that the letters from George and Company did not contain an offer to act as brokers on behalf of the defendant to find a purchaser for the hotel, but it is argued that the defendant "(1) did not accept the offer to submit a price, (2) did not accept the offer of a 2½% commission, did not submit any counter offers, and there was no meeting of the minds of the parties at any point and everything was left open for future arrangement."

■ Defendant's argument misconceives the nature of the contract involved and the law applicable to . such contracts. This was an offer to render a service as agent, to find a purchaser for real estate, ready, able and willing to buy, and to negotiate a sale with such purchaser on behalf of the owner on condition that the agent be paid 2½% of the purchase price. The offer to find such a purchaser and to carry on such negotiations was accepted. The law is that, when an offer to render a service on condi-

tions is made, an acceptance of the service is an acceptance of the conditions also. 17 C.J.S., Contracts, § 36. The defendant could not accept the offer to render a service, offered on condition that it be paid for at a specified rate, and secretly reserve the right to negotiate for the value of the service at a future date. Blake v. Scott, 92 Ark. 46, 121 S.W. 1054, 1056, 123 S.W. 1181. Under the circumstances, the defendant is presumed to have accepted the offer subject only to fixing the price at an "opportune time" in the future. Compare Wisconsin Steel Co. v. Maryland Steel Co., 7 Cir., 203 F. 403, 406; Zehr v. Wardall, supra; Davidson v. Poague, 7 Cir., 263 F. 876. In Mr. Glenn's letter of June 25, 1937, and other of the letters, the defendant invited George and Company to submit the name of its client, making but one reservation. That was a reservation to fix the price of the hotel in the future. When George and Company accepted the invitation to submit the name of its client and proceeded to negotiate on condition that the price of the hotel would not be submitted until the defendant considered the time opportune, it accepted the reservation and the contract was complete. All that remained to be done to perform the contract was for the defendant and the Schimmels to agree upon a price and to enter into a contract of sale, and no time limit was fixed for accomplishing that end.

■ The contention that Mr. Glenn, Manager of Real Estate, who carried on the correspondence with George and Company, had no authority to make the contract is without merit. The record shows that on July 21, 1937, he reported his negotiations with the Schimmels through George and Company to the Superintendent of Real Estate at the Home Office of the defendant, enclosing a copy of George and Company's letter of June 23, 1937, containing the offer to find a purchaser for a 2½% commission. The report also disclosed to the Home Office that Glenn was then negotiating with the Schimmels through George and Company. With this knowledge the defendant did not repudiate the obligation to pay the commission specified in case a sale resulted. The defendant could not thus accept the services of George and Company with full knowledge of the conditions on which such service was being rendered and thereafter deny liability by repudiating the contract. Lamon v. Speer Hardware Co., 8 Cir., 198 F. 453,

457, 458; Equitable Life Assur. Society v. Thomas, 8 Cir., 69 F.2d 361. Silence on that point was an acceptance. Restatement of the Law of Contracts, § 29.

■■■ The question of performance of the contract by George and Company was submitted to the jury. The court charged that the burden was upon the plaintiff to establish that George and Company "was the efficient and procuring and producing cause of the sale [of the hotel] by defendant to the Schimmel family or their corporation * * * that the * * * acts of plaintiff were in themselves the efficient and procuring and producing causes thereof."

We have already referred to the evidence showing that George and Company sought and obtained authority of Mr. Glenn to find and introduce a prospective purchaser for the hotel; that the Schimmels were introduced as such purchasers; that there was a meeting of all the parties in Wichita, Kansas, to inspect the hotel; and that a sale to the Schimmels was finally consummated. Through George and Company the defendant furnished financial and other information concerning the operation of the hotel to the Schimmels. These negotiations continued from early in 1937 until sometime in 1940 or 1941. Mr. Glenn testified that he knew all the time that the Schimmels were interested in purchasing the hotel and that the only cause of delay in closing the transaction was the inability of the parties to agree upon price and terms. On December 21, 1939, Mr. Glenn wrote a letter to Walter Schimmel inviting direct negotiations, to which Schimmel replied on January 5, 1940, stating that he was interested but that "I have had a chat with Mr. C. C. George of Omaha, who stated that he had recently had a chat with you in reference to some of your properties in the middle west." Mr. Glenn also testified that he encouraged George to keep after the Schimmels and that he never put any limit on the time George and Company were to work on the transaction, and that down to the time that the agreement was signed on March 12, 1942, George and Company never refused to carry out any negotiations or to do anything to further the negotiations with the Schimmels that Glenn requested.

The Kimball Company did not come into the transaction until December 6, 1940, when its president wrote a letter to Mr. Glenn asking if he might endeavor to work out a deal with the Schimmels and disclosing that he knew that the "Lassen deal" had previously been "offered to them by George and Company." The deal was thereafter closed in Kimball's office without disclosing to George and Company that Kimball was working on it. The fact is significant that the following provision was added at the end of the contract of sale and signed by C. C. Kimball Company:

"The undersigned, being the broker referred to herein, agrees that he will be entitled to a commission only in the event the sale is consummated in accordance with the terms hereof, that he is the only broker interested or involved in this sale and that he will protect the Seller against claims of any other broker or brokers for commission on this sale."

While we have stated the evidence in mere outline only, it is clear that it was sufficient to justify the submission of the question to the jury and to sustain the verdict. Kalman Steel Co. v. Armstrong, 8 Cir., 9 F.2d 512; Moffett v. Butler Mfg. Co., Mo.Sup., 46 S.W.2d 869, 871; Henning v. Holbrook-Blackwelder Real Estate Trust Co., 218 Mo.App. 433, 277 S.W. 62. Ordinarily the question of whether an agent is the producing cause of the sale of real estate is for the jury. This is always true when the evidence is conflicting. In Schmelzel v. Leecy, 104 Neb. 672, 178 N.W. 267, 269, the court said:

" * * * if the sale is directly attributable to the broker originally employed, his right to commissions cannot be defeated by the mere fact that the transaction was finally consummated through the medium of another broker. Masters v. Hunt, Tex.Civ. App., 197 S.W. 219; Cunliff v. Hausman, 97 Mo.App. 467, 71 S.W. 368. We are clearly of the opinion that neither the fact that the negotiations were commenced by one broker, nor the fact that they were closed by another, is, as a matter of law, alone decisive of the issue, but that where the plaintiff, as in the instant case, shows, by the evidence adduced in his behalf, that he introduced the purchaser to the defendant, and at no time abandoned his efforts to make the sale, and that the defendant, with knowledge of his efforts and without terminating his authority, concluded the sale through another agent, the controversy as to whether the plaintiff was the efficient procuring cause of the sale is for the jury. Votaw v. McKeever, 76 Kan. 870, 92 P. 1120."

See, also, Corum v. Arnold, 156 Mo.App. 547, 137 S.W. 622, 623.

■ But the defendant argues that George and Company could not have been the procuring cause of the sale of the hotel because the contract was abandoned by its letter of September 17, 1937, and terminated by the insurance company in its letter of September 27, 1937. The facts upon which these contentions are based are as follows: After the inspection of the hotel on July 20, 1937, by Mr. George and the Schimmels and after the submission of a price of $1,300,000 by Mr. Glenn on September 8, 1937, George and Company, on September 17, 1937, having submitted the price to the Schimmels, wrote the defendant, saying:

"The Schimmels have dismissed Hotel Lassen from their minds. They, as well as ourselves, appreciate the consideration given them by you and your company, and we are sorry there was such a great difference in ideas of value. * * * The Schimmels were definitely interested in the property, as you know, and would be now if price and terms of payment mutually agreeable to all parties could be arranged."

On September 18, 1937, Mr. Glenn answered: "In reply to your letter of September 17th I wish to advise that I too regret that the Schimmels did not care to further consider the Hotel Lassen, after the price was indicated by me. * * * If the Schimmels would care to make a definite counter offer on the property, including the business and equipment, I would be glad to give it consideration." On September 22, 1937, George and Company replied, saying that the Schimmels were not willing to make an offer "as their ideas of value and your suggested price were so far apart that it would be useless." To this letter Mr. Glenn wrote on September 27, 1937, saying:

"In reply to your letter of September 22nd, I believe that further consideration to this matter should not be given. It is not possible for me to furnish any indicated price other than the one which was given to you on my recent visit to Omaha.

"Possibly at some future date the Schimmels would be interested in reconsidering the matter, and until that time I would suggest that no further contact be made in that regard."

Had the negotiations ended at this point it might be said that the contract of agency was abandoned and terminated. But negotiations continued, and on February 1, 1940, Mr. Glenn suggested a price of $1,-000,000, which was also rejected. The court submitted the issues of abandonment and termination of the contract to the jury upon instructions to which no exceptions were taken. Without reciting all of the evidence, we are satisfied that it is sufficient to support the verdict.

■■ The defendant contends in the next place that the broker's contract was terminated by operation of law upon the dissolution of George and Company, the corporation, on December 31, 1941, and that the court erred in submitting to the jury the question of whether the partnership was thereafter recognized and accepted as the successor of the corporation.

On this point the court instructed the jury:

"And you are advised as a matter of law, if the defendant after the dissolution of the corporation, continued to deal with and treat the co-partnership as its agent, never objected or found fault with the services on the ground that it was a co-partnership, and that the business was conducted to all intents and purposes by the co-partnership under the same management, the same way; if you find from a preponderance of the evidence that these are the facts and you are so persuaded and are sufficient in your mind that the change in the agency was accepted by the defendant, you should so find." They were further instructed that unless you "find that the partnership took the place of the agency, which was the corporation, with the consent, knowledge and approval of defendant, then as a matter of law plaintiff would not be entitled to recover as a co-partnership."

There was an objection to the giving of the instruction, but not to its form. The contention is that the dissolution of the corporation terminated the contract as a matter of law. We think the question of whether the partnership was accepted by the defendant as its agent in lieu of the corporation is one of fact and not of law; that it was properly submitted to the jury; and that the evidence was sufficient to support the verdict of the jury. The Schimmels were not called as witnesses, but Lieutenant King, a member of the corporation before its dissolution and of the

partnership thereafter, testified that he participated in the negotiations between the Schimmels and Mr. Glenn from sometime in 1938 until September or October, 1941. A part of his testimony is denied by Mr. Glenn, but the conflict in the testimony clearly presented a question for the jury.

█ The defendant next contends that the action is barred because, in breach of its fiduciary relations, George and Company, the corporation, failed to communicate to defendant an offer of $800,000 made by the Schimmels for the hotel in January, 1940.

The meeting of George and Company and the Schimmels at which it is claimed the offer was made took place at the Blackstone Hotel in Omaha. Lieutenant King was the only person present at the meeting called as a witness. Referring to the conversation on that occasion he testified that a value of $800,000 for the hotel was discussed; and that the Schimmels would be willing to complete negotiations on that price; that the price of $1,000,000 submitted by Mr. Glenn was discussed and rejected. The court asked the witness, "Did the Schimmels ever authorize you to make any specific or definite offer for the purchase of this hotel at or about that time?" Lieutenant King answered: "I would have to qualify that by saying at the meeting on that day there was no final agreement to make the insurance company an offer. There was considerable discussion about it."

George and Company in a letter dated January 21, 1940, reported the meeting with the Schimmels at the Blackstone Hotel to the defendant, saying that the Schimmels "felt the property [Lassen Hotel] could not be operated by them on a satisfactory or profitable basis at the price quoted [$1,000,-000]," but that "they would still be interested in the hotel if price and terms were such as to justify them going into it." The fact that a price of $800,000 was discussed was not mentioned in the letter.

The court held that the evidence did not indicate that a binding offer was made by the Schimmels. This holding we think was correct. The evidence all shows that the Schimmels were interested at all times in the purchase of the hotel but that two factors entered into their consideration: price and terms of payment. The letter of January 21, 1940, alone made that clear. The discussion testified to by Lieutenant King is consistent with the attitude of the Schim-

mels throughout the negotiations; and he made it clear that he was not authorized to communicate an offer of $800,000 without qualifications. The testimony does not refer to any discussion of terms of payment.

█ The remaining contentions of appellant present questions of law only. It is contended that the contract is controlled by Nebraska law and that it is void under section 36-108, Compiled Statutes of Nebraska, 1929, and not, therefore, enforceable. This statute provides:

"Every contract for the sale of lands, between the owner thereof and any broker or agent employed to sell the same, shall be void, unless the contract is in writing and subscribed by the owner of the land and the broker or agent, and such contract shall describe the land to be sold, and set forth the compensation to be allowed by the owner in case of sale by the broker or agent."

The court held that the contract is controlled by the law of Missouri, where it was made, and held it valid. It was conceded on the trial "That there is no statute or provision in the State of Missouri requiring a broker's contract to be in writing, or describe the land or state the amount of commission agreed."

It is unnecessary to decide under the circumstances which law governs. The contract is valid under either the Missouri or the Nebraska law. The correspondence described the property as the Lassen Hotel, Wichita, Kansas, and photographs were submitted showing the hotel. The letters passing between the parties were signed by the parties, and the commission was fixed at 2½% of the selling price. The Supreme Court of Nebraska has held in numerous cases that this is sufficient compliance with the statute. O'Shea v. Smith, 142 Neb. 231, 5 N.W.2d 348, 350; Wright v. Negus, 111 Neb. 260, 196 N.W. 148; Pottratz v. Piper, 95 Neb. 145, 145 N.W. 265, 266; Shoff v. Ash, 95 Neb. 255, 145 N.W. 271, 272; Holliday v. McWilliams, 76 Neb. 324, 107 N.W. 578, 580; Ruzicka v. Hotovy, 72 Neb. 589, 101 N.W. 328, 9 Ann.Cas. 1058.

Appellant argues further that plaintiff can not maintain this action because to do so would be contrary to the public policy of Nebraska and the prohibition of section 76-901, Compiled Statutes, Supp.Neb., 1941, Act of 1935, which statute reads:

"That on and after January 1st, 1936, it shall be unlawful for any person, which term as used in this act shall include any co-partnership, association or corporation, to act as a real estate broker or real estate salesman, or to advertise to act as such real estate broker or real estate salesman, or to receive or demand any compensation or commission as such real estate broker or real estate salesman, without first having procured a permit to be issued by the real estate commissioner herewith provided for."

The evidence is without dispute that neither George and Company, the corporation, nor George and Company, the partnership, ever held a permit as a licensed real estate broker in Nebraska.

The controversy here covers the period from April 21, 1936, to March 12, 1942, the date of the sale. The quoted statute (Act of 1935, C.S.Supp.Neb., 1941) was in effect from January 1, 1936, to August 23, 1943. When it was repealed section 9, Ch. 171 Laws of Neb., 1943, was enacted, effective August 29, 1943. Section 9 reads:

"Any person, engaged in the business of or acting in the capacity of a real estate broker or real estate salesman within this state, shall not be permitted to bring or maintain any action in the courts for the collection of compensation for the sale of real estate without first alleging and proving that such person was a duly licensed real estate broker or real estate salesman at the time the alleged cause of action arose."

This action was commenced in the state court of Nebraska, July 14, 1942, and removed to the federal court December 6, 1943.

During all of the time covered by the controversy the members and representatives of George and Company, both as a corporation and as a partnership, were individually licensed brokers under the statute.

 Since the above quoted section of the Laws of Nebraska of 1943 was not enacted until after the present cause of action arose and this action was commenced, it has no application to the rights of the parties here. The general rule applies in Nebraska that "a statute will be held to operate prospectively and not retrospectively unless the legislative intent or purpose that it shall operate retrospectively is clearly disclosed." War Finance Corporation v. Thornton, 118 Neb. 797, 226 N.W. 454, 455, and cases cited; and see Ginsberg v. Lindel, 8 Cir., 107 F.2d 721, 726, and cases cited. And no intent that the Act of 1943 should operate retrospectively is disclosed in the statute.

The difficulty here arises over the construction to be placed on section 76-901 of the Act of 1935, which provides that "it shall be unlawful for any person, which term as used in this act shall include any co-partnership, association or corporation, to act as a real estate broker * * * without first having procured a permit to be issued by the real estate commissioner herewith provided for."

 To arrive at the meaning of the law the entire act as construed by the officers charged with its administration must be considered. The title of the act is in part: "An Act to define real estate broker and real estate salesman; * * * to create the office of real estate commissioner under the supervision of the Secretary of State; to provide for permits to such real estate brokers and * * * salesmen; to provide fees for permits, * * *."

Section 76-904 provides that "Every member or officer of each copartnership, association or corporation, who actively participates in the real estate brokerage business * * * shall obtain a permit."

This section does not include copartnerships and corporations among those required to obtain a permit.

Section 76-906: "The Secretary of State shall be Real Estate Commissioner and shall be charged with the administration of this Act."

Section 76-907: "The said Commissioner shall have full power to regulate the issuance and revocation of permits * *."

Section 76-909: "The Attorney General of the State shall render to the said Commissioner opinions on all questions of law relating to the interpretation of this Act, or arising in the administration of said office, * * *."

Section 76-910: "* * * the applicant for permit must pass a written examination before said Commissioner * * * that he has a fair understanding of the general purpose and effect of deeds, land contracts, mortgages and leases, and a fair understanding of the obligations between principal and agent."

Other sections provide for the collection of fees from brokers; for the delivery of the permit and for its display in the office of the broker, and for a hearing before denial or revocation of a permit.

A reading of the Act of 1935 makes it apparent that a broker's license could not legally be issued to a corporate or partnership entity for the reason that such an entity could not take the written examination required of all applicants for a license under section 76-910. Mr. Frank Marsh, Secretary of State of Nebraska from and since January 1, 1941, and charged with the administration of the Act, testified that, pursuant to the requirement of section 76-909, he sought the opinion of the Attorney General of the state who is charged with the interpretation of the Act, and that, in accordance with the advice of the Attorney General, regulations were adopted under the authority of section 76-907, under which regulations applications were not received from corporations and partnerships but that every member or officer of every corporation and partnership who actively participates in the real estate brokerage business of such corporation or partnership was required to obtain a license. No license was at any time while the Act was in effect issued to a corporation or partnership as such under the law.

Under these circumstances we are not called upon to interpret the law nor to hold that the construction placed upon it by the Attorney General and Secretary of State is sound. They so construed the law from the beginning. They were charged with its interpretation and its administration. The Legislature of Nebraska meets biennially. While the Act was in effect and so interpreted the Legislature met three times, 1937, 1939, and 1941, and made no changes in the law. In this situation it is the law of Nebraska that the Legislature approved as correct the interpretation placed upon the statute by these officers. State ex rel. Village of Dakota City v. Bryan, 112 Neb. 692, 200 N.W. 870; Douglas County v. Vinsonhaler, 82 Neb. 810, 118 N.W. 1058; Rohrer v. Hastings Brewing Co., 83 Neb. 111, 119 N.W. 27, 17 Ann. Cas. 998; State v. Sheldon, 79 Neb. 455, 113 N.W. 208. The Nebraska rule is of general application. See Helvering v. Cronin, 8 Cir., 106 F.2d 907, 909; Helvering v. Winmill, 305 U.S. 79, 59 S.Ct. 45, 83 L. Ed. 52. For these reasons it is immaterial whether the court erred in holding that the Missouri law rather than the Nebraska law was applicable.

Finally, appellant argues that the court erred in that conflicting instructions were given on the burden of proof. We have examined the instructions with care, and we find no conflict in them upon this point as they are certified in the record.

Having reviewed the entire record and finding no prejudicial error therein the judgment appealed from is affirmed.